# Home Equity Line of Credit

| Lender | Borrower | |
|---|---|---|
| **State Bank of the Lakes**<br>440 Lake Street<br>Antioch, IL 60002<br>847-395-2700 | Roudell Kirkwood<br>1511 Laurel Avenue, Waukegan<br>IL 60085 | Loan Number ▬▬▬▬<br>Agreement Date 4/26/2006<br>Credit Limit $ 50,000.00<br>Maturity Date April 26, 2011 maturity |

### Generally

**Definitions.** In this Agreement, these terms have the following meanings. The pronouns *you* and *your* refer to all Borrowers signing this Agreement, jointly and individually, and each other person or legal entity that agrees to pay this Agreement. *We, us,* and *our* refer to the Lender, or any person or legal entity that acquires an interest in the Line of Credit. *Agreement* refers to this Home Equity Line of Credit, and any extensions, renewals, modifications or substitutions of it. *Billing Cycle* means the interval between the days or dates of regular periodic statements. *Minimum Payment* means the minimum payment amount required under the Minimum Payment section. *Payment Date* is the payment due date as provided on your periodic statements. *Credit Limit* means the maximum amount of principal we will permit you to owe us under this Line of Credit, at any one time. Your Credit Limit is stated at the top of this Agreement. *Line of Credit* refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures, and this Agreement. *Loan Account Balance* means the sum of the unpaid principal balance advanced under the terms of this Agreement, finance charges, fees, and other charges that are due, and other amounts advanced to you or others under the terms of this Line of Credit. *Property* means any real or personal property that secures your obligations under this Line of Credit. *Minimum Advance* means the smallest amount of money we will advance to you at your request.

Other important terms are defined throughout this Agreement.

**Promise to Pay.** You promise to pay us or our order, at our address, or at such other location as we may designate, so much of the Credit Limit as may be advanced under this Agreement, plus finance charges, fees, charges, costs, and expenses as described in this Line of Credit.

**Agreement Term.** This Agreement begins on the Agreement Date. The *Draw Period* also begins on the Agreement Date and is the 5-year period during the term of this Agreement that you may request advances.

**Tax Deductibility.** You should consult a tax advisor regarding the deductibility of interest and charges under this home equity plan.

### Advances

**Advance Methods.** You may request advances by the following methods:
* You write a Home Equity Line of Credit Check that we have given to you for this purpose.
* You request a withdrawal in person.
* You request a withdrawal by phone.

We will make the advance by advancing the amount directly to you, depositing it in your Transaction Account, or by paying a designated third person or account. We will record the amount as an advance and increase your Loan Account Balance.

**Advance Limitations.** We do not have to make any advances during any period in which you have a right to cancel. Your ability to request and access advances is also subject to the following additional limitations:

**Minimum Advance.** When you request an advance, the minimum amount we will advance will be $100.00 *(Minimum Advance)*. We will, subject to the limitations contained in this Agreement, advance either the Minimum Advance, or exactly the amount you request, provided the requested amount equals or exceeds the Minimum Advance.

**Credit Limit.** Subject to the terms and conditions of this Agreement, you may borrow on this Line of Credit up to the Credit Limit. You agree not to request or obtain an advance that will cause the unpaid principal of your Loan Account Balance to exceed the Credit Limit. You understand that we will not ordinarily grant a request for an advance that would cause the unpaid principal of your Loan Account Balance to be greater than the Credit Limit, but that we may, at our option, grant such a request without obligating ourselves to do so in the future. Your Credit Limit will not be increased if you overdraw the Line of Credit. If you exceed the Credit Limit, you agree to pay the amount by which the unpaid principal of your Loan Account Balance exceeds the Credit Limit immediately, even if we have not yet billed you. Any sums in excess of the Credit Limit will not be secured by the Property, unless they are for accrued but unpaid interest or expenditures made pursuant to the security instrument securing the Property.

### Finance Charges

**Computation of Finance Charges.** Finance charges begin to accrue immediately when we make an advance to you. Finance charges will be computed as follows:

To figure the finance charge for each Billing Cycle, a daily periodic rate is multiplied by the Daily Balance of your Loan Account Balance each day. To figure the Daily Balance, we first take your Loan Account Balance at the beginning of each day, and add any new advances, and subtract any payments or credits that apply to debt repayment, and any unpaid finance charges, fees and charges. This gives us the Daily Balance.

The periodic rate used in calculating the **FINANCE CHARGE** is _____ 7.75 % and the corresponding **ANNUAL PERCENTAGE RATE** is _____ 7.75 %. The annual percentage rate includes interest and not other costs.

**Variable Rate.** The annual percentage rate may change and will be based on the value of an index. The index is the base rate on corporate loans posted by at least 75% of the nation's 30 largest banks known as the Wall Street Journal Prime Rate *(Index)*. To determine the annual percentage rate we add a _____ 0.00 percentage point margin to the value of the Index.

**Rate Changes.** The annual percentage rate may increase if the Index rate increases. An Index rate increase will result in a higher finance charge and it may have the effect of increasing your periodic Minimum Payment. A decrease in the Index rate will have the opposite effect as an increase. An Index rate increase or decrease will take effect on the date the index rate changes. The annual percentage rate can increase or decrease daily. If the Index rate changes more frequently than the annual percentage rate, we will use the Index rate in effect on the day we adjust the annual percentage rate to determine the new annual percentage rate. In such a case, we will ignore any changes in the Index rate that occur between annual percentage rate adjustments.

**Rate Change Limitations.** Annual percentage rate changes are subject to the following limitations:

**Lifetime Floor.** The minimum **ANNUAL PERCENTAGE RATE** that can apply during the term of this Line of Credit is 5%.

**Lifetime Cap.** The maximum **ANNUAL PERCENTAGE RATE** that can apply during the term of this Line of Credit is 18% or the maximum annual percentage rate allowed by applicable law, whichever is less.

**Additional Finance Charges.** You agree to pay the following additional
**FINANCE CHARGES**:

* **Minimum Finance Charge.** For any Billing Cycle in which your Loan Account Balance is greater than $0.00 on the date the periodic rate is applied, you agree to pay a minimum finance charge of $.50 for the Billing Cycle if the accrued and earned finance charges are less than this minimum finance charge amount.

### Payment Terms

**Payment Date.** During the term of this Agreement, a Minimum Payment will be due on or before the Payment Date for any Billing Cycle in which there is an outstanding balance on your account. Your Minimum Payments will be due monthly.

**Minimum Payment.** On or before each Payment Date, you agree to make a payment of at least the Minimum Payment amount.

The Minimum Payment will equal any amount past due, any fees and charges that are due, and the following:

The amount of accrued finance charges on the last day of the Billing Cycle.

**Payment At Maturity.** On the Maturity Date you must pay the entire outstanding Loan Account Balance.

**Principal Reduction.**

**Draw Period.** During the Draw Period, the Minimum Payment [X] will not reduce [ ] may not fully repay the principal balance outstanding on your Loan Account Balance.

**Final Payment.** At maturity, you must pay the amount of any remaining Loan Account Balance outstanding. The Minimum Payments will not be sufficient to fully repay the principal that is outstanding on your line. If they are not, you will be required to pay the entire outstanding balance in a single balloon payment. At that time, you may refinance this Line of Credit. If you refinance this account at maturity, you may have to pay some or all of the closing costs normally associated with a new loan even if you obtain financing from us.

**Additional Payment Terms.** If your Loan Account Balance on a Payment Date is less than the Minimum Payment amount, you must pay only the amount necessary to reduce your Loan Account Balance to zero or to any required Minimum Balance. If you otherwise fail to fully pay the Minimum Payment amount, we may, but are not required to, advance money to you to make the payment. All the terms of this Agreement will apply to such an advance. Subject to any required Minimum Balance, you can pay off all or part of what you owe at any time. If you pay more than the Minimum Payment amount, you must continue to make your periodic Minimum Payments as otherwise required by this Agreement.

Unless otherwise agreed or required by applicable law, payments and other credits will be applied first to any charges you owe other than principal and finance charges, then to any finance charges that are due, and finally to principal. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment.

| EXHIBIT |
|---|
| Group 2 |



### Security

We have secured your obligations under this Line of Credit by taking a security interest (by way of a separate security instrument dated

**4/26/2006** ) in the following Property:
**1511 Laurel Avenue, Waukegan IL 60085**

Property securing any other loans that you have with us may also secure this Agreement.

**Filing Fees.** $ **Refer To Good Faith Estimate**

### Insurance

**Property Insurance.** You may buy property insurance from anyone you want who is reasonably acceptable to us. If you buy the insurance from or through us, your premium will be **N/A** for **N/A** of coverage.

**Collateral Protection Insurance Notice.** Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by your agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

### Other Fees and Charges

You agree to pay the following additional fees and charges:

- **Late Charge.** If a payment is late (more than 15 days after due) you will be charged 5% of the payment.
- **Annual Fee.** A fee of $20.00 due annually in order to continue this Line of Credit. We will add this amount to your Loan Account Balance annually.
- **Returned Check Charge.** A charge not to exceed $25.00 for each check or negotiable order of withdrawal you issue in connection with this Line of Credit that is returned because it has been dishonored.

### Additional Terms

**Commissions.** You understand and agree that we (or our affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that you buy through us or our affiliate.

**Default.** You will be in default if any of the following occur:

- You fail to make a payment as required by this Agreement.
- Your action or inaction adversely affects the Property or your rights in the Property.
- You engage in fraud or material misrepresentation in connection with this Line of Credit.
- You are an executive officer of us or our affiliate and you become indebted to us or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

**Suspension of Credit and Reduction of Credit Limit.** We may temporarily prohibit you from obtaining additional advances or reduce your Credit Limit during any period in which any of the following are in effect:

- The value of the Property securing this Line of Credit declines significantly below its appraised value for purposes of this Line of Credit.
- We reasonably believe that you will not be able to meet the repayment requirements under your Line of Credit due to a material change in your financial circumstances.
- You are in default of a material obligation under this Line of Credit. You understand, that we consider all of your obligations to be material. Categories of obligations that we consider material include, but are not limited to: your obligation to not commit fraud or misrepresentation in connection with this Line of Credit; your obligation to meet the repayment terms of this Line of Credit; your obligation to not adversely affect the Property or our rights in the Property; your obligation to pay fees and charges; your advance obligations; your obligation to fulfill the terms of the instrument securing this Agreement, and any other security instruments on the Property; your obligation to notify us; and your obligation to provide us with information.
- Government action prevents us from imposing the annual percentage rate provided for in this Agreement.
- The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than 120 percent of your Credit Limit.
- The maximum annual percentage rate allowed under this Agreement is reached.
- We are notified by a regulatory agency that continued advances constitute an unsafe and unsound practice.
- Any Borrower requests a suspension of credit privileges.

If you request us to reinstate your credit privileges under the original terms of this Agreement, you must send us a written request to that effect. Your credit privileges will only be reinstated if we determine that the condition which caused us to prohibit additional extensions and/or reduce the Credit Limit no longer exists. If appraisal or credit report fees are incurred in making this determination, we may (if allowed by applicable law) charge you such fees. If credit privileges were suspended at your request, they need not be reinstated unless all Borrowers request reinstatement.

**Remedies.** After you default, and after we give any legally required notice and opportunity to cure, we may at our option do any of the following:

- We may terminate this Line of Credit and make all or any part of the amount owing by the terms of this Agreement immediately due.
- We may temporarily or permanently prohibit any additional advances.
- We may temporarily or permanently reduce the Credit Limit.
- We may demand additional security or additional parties to be obligated to pay this Agreement.
- We may make a claim for any and all insurance benefits or refunds that may be available on your default.
- We may make amounts advanced on your behalf immediately due, and we may add these amounts to the Loan Account Balance.
- We may use any and all remedies we have under applicable law or any agreement securing this Agreement.

Except as otherwise required by law, by choosing a remedy we do not give up our right to use another remedy. We do not waive a default if we choose not to use a remedy. By electing not to use any remedy, we do not waive our right to later consider the event a default and to use any remedies if the default continues or occurs again.

**Collection Expenses and Attorneys' Fees.** On or after default, to the extent permitted by law, you agree to pay all expenses of collection, enforcement or protection of our rights and remedies under this Line of Credit. Expenses include reasonable attorneys' fees. To the extent permitted by the United States Bankruptcy Code, you agree to pay the reasonable attorneys' fees we incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**Set-Off.** We may set-off any amount due and payable under the terms of this Agreement against your right to receive money from us, unless prohibited by applicable law.

**Amendments.** Generally, the terms of this Agreement cannot be changed. We may, however, make the following changes:

- We may make changes that you agree to in writing at the time of the change.
- We may make changes that will unequivocally benefit you.
- We may make insignificant changes.
- We may change the Index and margin if the original Index becomes unavailable. Any new index will have a historical movement substantially similar to the original Index, and together with the new margin, produce an annual percentage rate substantially similar to the rate in effect at the time the original Index became unavailable.

If we change the terms of this Agreement, we will mail notice of the change to you. When the change becomes effective, it will apply to all outstanding Loan Account Balances, including amounts arising out of a transaction occurring before the change.

If the change has the effect of increasing your interest rate or other charges, we will mail you notice at least 30 days before the effective date of the change. In such a case, the change will take effect only if you make a purchase or obtain a loan after the date specified in the notice. Otherwise, you may pay the outstanding Loan Account Balance according to the terms of the plan without regard to the change.

**Termination.** You may terminate this Line of Credit at any time upon written notice to us. Termination by one Borrower terminates the Line of Credit for all Borrowers. Termination will not affect your obligation to repay advances made prior to the termination, nor will it alter your duties to perform under the terms of an instrument securing this Agreement until such instrument is released. Upon termination you will return to us any remaining access devices in your possession that were issued or used in connection with the Line of Credit.

**Waivers and Consent.** To the extent not prohibited by law and except for any required notice of right to cure for the failure to make a required payment, you waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor. To the extent not prohibited by law, you and any other party to this Line of Credit, also consent to the following actions that we may take, and waive defenses that may be available based on these actions, or based on the status of a party to this Line of Credit:

- We may renew or extend payments on this Agreement, regardless of the number of such renewals or extensions.
- We may release any Borrower or other person who may be liable for the indebtedness under this Agreement.
- We may release, substitute or impair any Property securing this Agreement.
- We may invoke our right of set-off.
- We may enter into any sales or repurchases of this Agreement to any person in any amounts and you waive notice of such sales or repurchases.
- You agree that any Borrower is authorized to modify the terms of this Agreement or any other Line of Credit document.
- We may inform any party who guarantees this Line of Credit of any loan accommodations, renewals, extensions, modifications, substitutions, or future advances.
- No delay or forbearance on our part in exercising any of our rights or remedies will be construed as a waiver by us, unless such waiver is in writing and is signed by us.

**Periodic Statements.** If you have an outstanding balance on your account or have any account activity, we will send you a periodic statement at the end of each Billing Cycle. This periodic statement will reflect, among other things, credit advances, finance charges, other charges, payments made, other credits, your previous account balance and your new account balance. The periodic statement will also identify your Minimum Payment for the cycle and the Payment Date.

**Joint and Individual Liability and Successors.** Your obligation to pay this Line of Credit is independent of the obligation of any other person who has also agreed to pay it. We may sue you alone, or anyone else who is obligated on this Line of Credit, or any number of you together, to collect on this Line of Credit. Extending this Line of Credit or new obligations under this Line of Credit, will not affect your duty under this Line of Credit and you will still be obligated to pay this Line of Credit. The duties and benefits of this Line of Credit will bind and benefit the successors and assigns of you and us.

**Integration and Severability.** This Agreement is the complete and final expression of the agreement. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**Interpretation.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this agreement.

**Notice, Financial Reports, and Additional Documents.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address above, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. You will inform us in writing of any change in your name, address or other application information. You will provide us any financial statement or information we request. All financial statements and information you give us will be correct and complete. You agree to sign, deliver, and file any additional documents or certifications that we may consider necessary to perfect, continue, and preserve your obligations under this Line of Credit and to confirm our lien status on any Property. Time is of the essence.

**Credit Information.** You agree to supply us with whatever information we reasonably feel we need to decide whether to continue this Line of Credit. We will make requests for this information without undue frequency, and will give you reasonable time in which to supply the information.

**Applicable Law.** This Agreement is governed by the laws of Illinois, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located.

### Signatures

You understand that terms following a [X] only apply if checked. By signing, you agree to the terms of this Agreement. You also acknowledge receipt of a copy of this Agreement on today's date.

X *Roudell Kirkwood*
Roudell Kirkwood

X _____

X _____

(Optional)
X _____ For Lender

Title _____

## YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

### Notify Us In Case of Errors or Questions About Your Bill

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings, checking, share draft or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

### Your Rights and Our Responsibilities After We Receive Your Written Notice

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.



```
Image#: 048995100002  Type: MTA
Recorded: 07/27/2012 at 02:45:19 PM
Receipt#: 2012-00045784
Page 1 of 2
Fees: $39.00
IL Rental Housing Fund: $10.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder
File 6877822
```

## LOAN MODIFICATION AGREEMENT

THIS AGREEMENT, dated **February 2, 2012**, with an effective date of **February 15, 2012** by and between **STATE BANK OF THE LAKES**, a corporation existing under the laws of the State of Illinois, hereinafter called the Bank, and **Roudell Kirkwood, a married person**, hereinafter called the Borrower(s).

### WITNESSETH

WHEREAS, the Borrower(s) are indebted to the Bank under a Note and a Mortgage dated **April 26, 2006** in the principal sum of **Fifty Thousand Dollars and 00/100 ($50,000.00)**, which mortgage is filed in the office of the Lake County Recorder of Deeds as Document Number **6008624** recorded on **June 13, 2006**, together with all renewals of, extensions of, modifications of, refinancing of, consolidations of, and substitutions for the promissory note or agreement.

WHEREAS, the parties hereto wish to modify the terms of payment of said indebtedness; **NOW THEREFORE**, in consideration of the mutual promises and convenants of the parties hereto, it is agreed as follows:

1. The Borrower(s) promise to pay the Bank the **current** indebtedness of **Fifty Three Thousand Three Hundred Forty Five Dollars and 35/100 ($53,345.35)**, in installments of **Five Hundred Forty Dollars and 10/100 ($540.10)** principal and interest, on or before the **15th** day of each and every month commencing **March 15, 2012**. Installments are to include interest at a rate of **4.00%**, said interest to be computed as stipulated in the aforementioned Note, and the balance of the indebtedness, if not sooner paid, is due and payable on **February 15, 2022. This loan is converting from a HELOC interest only payment to a fully amortizing loan with principal and interest payments.**

2. It is agreed that neither the agreement nor the obligation evidencing such indebtedness, nor the Mortgage or the security given to secure same, shall in any way be prejudiced by the modification agreement, said agreement intended to be modified only to the extent herein mentioned and said Mortgage to remain in full force and effect.

**IN WITNESS WHEREOF,** the Bank has caused this instrument to be signed in its corporate name by its Assistant Vice President, attested by its Sr Vice President with its corporate seal affixed, and the Borrower(s) have affixed their hands and seals, all at Antioch, Illinois this date aforesaid.

ATTESTED BY:                                   STATE BANK OF THE LAKES

By: _____                    By: _____
Deidre Palmer                                  Tracie A Baker
Sr. Vice President Real Estate Lending         Assistant Vice President Real Estate Lending


_____
Roudell Kirkwood


_____


STATE OF ILLINOIS}
COUNTY OF LAKE}
this 2nd day of February, 2012
Subscribed and Sworn to before me

"OFFICIAL SEAL"
STEPHANIE A. CALVERT
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 05/05/13

_____
Notary Public

**LEGAL DESCRIPTION:**

LOT 25 AND THE EAST 15 FEET OF LOT 26 IN BROWN'S SUBDIIVISION OF PART OF THE SOUTH EAST 1/4 OF SECTION 20, TOWNSHIP 45 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JUNE 21, 1911 AS DOCUMENT 136229 IN BOOK "I" OF PLATS, PAGE 14, IN LAKE COUNTY, ILLINOIS.

**PERMANENT INDEX NUMBER: 08-20-422-055**

THIS DOCUMENT WAS PREPARED BY:                 MAIL TO:

**STATE BANK OF THE LAKES**                    **STATE BANK OF THE LAKES**
**Real Estate Lending**                        **Real Estate Lending**
**2031 East Grand Avenue**                     **2031 East Grand Avenue**
**Lindenhurst, Illinois 60046**                **Lindenhurst, Illinois 60046**

Loan # ███████████

This document was prepared by:

Michelle White
2031 Grand Ave.
Lindenhurst, IL 60046

When recorded, please return to:

State Bank of The Lakes
2031 E Grand Ave
Lindenhurst, IL 60046

6008624

FILED FOR RECORD BY:
MARY ELLEN VANDERVENTER
LAKE COUNTY, IL RECORDER
06/13/2006 - 12:45:06 P.M.
RECEIPT #: 290720
RHSP $10.00
DRAWER #: 18

CTIC-HE

Space Above This Line For Recording Data

# MORTGAGE
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is April 26, 2006 and the parties, their addresses and tax identification numbers, if required, are as follows:

   MORTGAGOR:

   Roudell Kirkwood, A Married Person

   LENDER:

   State Bank of The Lakes
   2031 Grand Ave., Lindenhurst IL 60046

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, sells, conveys, mortgages and warrants to Lender the following described property:
   LOT 25 AND THE EAST 15 FEET OF LOT 26 IN BROWN'S SUBDIIVISION OF PART OF THE SOUTH EAST 1/4 OF SECTION 20, TOWNSHIP 45 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JUNE 21, 1911 AS DOCUMENT 136229 IN BOOK "1" OF PLATS, PAGE 14, IN LAKE COUNTY, ILLINOIS.

   PERMANENT INDEX NUMBER: 08-20-422-055

   The property is located in Lake at 1511 Laurel Avenue
   (County)
   , Waukegan , Illinois 60085
   (Address) (City) (ZIP Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(You must specifically identify the debt(s) secured and you should include the final maturity date of such debt(s).)*
   April 26, 2011 maturity date to support a note dated April 26, 2006 in the amount of $50,000.00

**ILLINOIS - HOME EQUITY LINE OF CREDIT MORTGAGE** (NOT FOR FNMA, FHLMC, FHA OR VA USE) (page 1 of 6)
© 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-IL 6/17/99

VMP -C465(IL) (9909).04 VMP MORTGAGE FORMS - (800)521-7291



B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All other obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

In the event that Lender fails to provide any necessary notice of the right of rescission with respect to any additional indebtedness secured under paragraph B of this Section, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument (but does not waive the security interest for the debts referenced in paragraph A of this Section).

4. **MORTGAGE COVENANTS.** Mortgagor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Mortgagor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Mortgagor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees to make all payments when due and to perform or comply with all covenants. Mortgagor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

*(page 2 of 6)*



© 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-IL 6/17/99


VMP®-C465(IL) (9909).04

**Authority to Perform.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

5. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

6. **DEFAULT.** Mortgagor will be in default if any of the following occur:

    **Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

    **Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

(page 3 of 6)

© 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REM TG-IL 6/17/99

VMP®-C465(IL) (9909).04

3

**Property.** Any action or inaction occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Mortgagor fails to maintain required insurance on the Property; (b) Mortgagor transfers the Property; (c) Mortgagor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Mortgagor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Mortgagor dies; (f) if more than one Mortgagor, any Mortgagor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Mortgagor and subjects Mortgagor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

**Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

7. **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default. In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions. Upon default, Lender shall have the right, without declaring the whole indebtedness due and payable, to foreclose against all or part of the Property. This Security Instrument shall continue as a lien on any part of the Property not sold on foreclosure.

   At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

8. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Mortgagor breaches any covenant in this Security Instrument, Mortgagor agrees to pay all expenses Lender incurs in performing such covenants or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released.

9. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.



(page 4 of 6)



Mortgagor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

10. **ESCROW FOR TAXES AND INSURANCE.** If otherwise provided in a separate agreement, Mortgagor may be required to pay to Lender funds for taxes and insurance in escrow.

11. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

12. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

13. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

14. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.



(page 5 of 6)



© 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-IL 6/17/99

VMP®-C465(IL) (9909).04

5

**15. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 50,000.00 _____. This limitation of amount does not include interest, attorneys fees, and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**16. LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

**17. APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

**18. RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.
[Check all applicable boxes]
☐ Assignment of Leases and Rents     ☒ Other  1-4 Family Rider

**19.** ☐ **ADDITIONAL TERMS.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

_Roudell Kirkwood_  4/26/06
(Signature) Roudell Kirkwood  (Date)        (Signature)                        (Date)

**ACKNOWLEDGMENT:**
(Individual)  STATE OF __Illinois__, COUNTY OF __Lake__ } ss.
This instrument was acknowledged before me this __26th__ day of __April, 2006__
by _____
My commission expires:
(Seal)
                                          (Notary Public)

"OFFICIAL SEAL"
CINDY ALLARD
Notary Public, State of Illinois
My Commission Expires 03/24/07

© 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-IL 6/17/99        *(page 6 of 6)*
VMP -C465(IL) (9909).04

# 1-4 FAMILY RIDER
(Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 26th day of April 2006,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to State Bank of The Lakes

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 1511 Laurel Avenue, Waukegan IL 60085

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01**

VMP-57R (0411)
Page 1 of 3     Initials: _____
VMP Mortgage Solutions, Inc.
(800)521-7291

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials: _____

VMP®-57R (0411)    Page 2 of 3    Form 3170 1/01



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_Roudell Kirkwood_ (Seal)  
Roudell Kirkwood    -Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

VMP-57R (0411)    Page 3 of 3    Form 3170 1/01

9