**United States Bankruptcy Court, Northern District of Illinois**

| Name of Assigned Judge | A. Benjamin Goldgar | CASE NO. | 15 B 41449 |
|---|---|---|---|
| **DATE** | November 24, 2020 | **ADVERSARY NO.** | |
| **CASE TITLE** | Roudell Kirkwood | | |
| **TITLE OF ORDER** | Order granting debtor's motion for determination of final cure and payment | | |

**DOCKET ENTRY TEXT**

The motion of Roudell Kirkwood for determination of final cure and payment is granted. Kirkwood has cured the defaults in the first and second mortgages of State Bank of the Lakes and has paid all required post-petition amounts. The mortgages are reinstated in accordance with their original terms.

**[For further details see text below.]**

**STATEMENT**

Before the court for ruling in this concluded chapter 13 case is debtor Roudell Kirkwood's motion under Rule 3002.1(h) to determine the final cure and payment for two mortgages held by State Bank of the Lakes. Kirkwood says he made all the payments his confirmed plan required and so is current on both mortgages. The Bank disagrees, arguing that the arrearages in his confirmed plan were wrong.

For the reasons below, Kirkwood has the better of the dispute. His motion will be granted.

### 1. Facts

The facts are drawn from the parties' joint stipulation, from Kirkwood's petition and schedules, and from the court's docket. No facts are in dispute.

Kirkwood owns a two-flat on Laurel Avenue in Waukegan, Illinois. The property serves as his principle residence. The Bank holds first and second mortgages on the property.

In late 2015, Kirkwood filed a chapter 13 bankruptcy case. On the creditor matrix and on his Schedule D, he listed the Bank as a creditor. Shortly after Kirkwood filed the case, the Bankruptcy Noticing Center sent notice of the case to all creditors, including the Bank. Section

## STATEMENT

8 of the notice set a deadline of April 11, 2016 for all non-governmental creditors to file proofs of claim. The Bank filed no claims by the deadline.

On the petition date, Kirkwood also filed a chapter 13 plan. Under the plan, Kirkwood proposed to maintain current monthly payments on the first mortgage and pay the Bank arrears of $40,961 over the plan term. The second mortgage he would treat as unsecured because, the plan said, the first mortgage fully encumbered the property. Kirkwood proposed to pay general unsecured creditors a minimum dividend of 10%. The Bankruptcy Noticing Center gave the Bank notice of the plan. The Bank did not object to its confirmation.

On April 1, before the confirmation hearing, Kirkwood proposed a modified plan. The modified plan treated the Bank's mortgages the same way the original plan had, except that Kirkwood no longer proposed to treat the second mortgage as unsecured; instead, he would maintain current payments on it. The Bankruptcy Noticing Center gave the Bank notice of the modified plan. The Bank did not object to its confirmation, either.

Because the Bank had filed no claims by the April 11 bar date, Kirkwood filed proofs of claim on the Bank's behalf. Claim No. 7-1 listed $40,961 in arrears on the first mortgage; Claim No. 8-1 listed $5,000 in arrears on the second mortgage. The clerk's office sent the Bank notice of claims' filing. The Bank did nothing in response.

On April 21, Kirkwood modified his plan again, this time to make it consistent with the claims he had filed for the Bank. Kirkwood proposed to maintain the same current monthly payments on the first mortgage and pay the Bank the same arrears – $40,961. As to the second mortgage, he now proposed to maintain current monthly payments and pay the Bank the $5,000 in arrears shown in Claim No. 8-1. The Bankruptcy Noticing Center gave the Bank notice of the modified plan. Again, the Bank did not object to confirmation.

On April 28, Kirkwood modified his plan once more, but only to pay unsecured creditors a dividend of 100%. The plan was confirmed the next day. Section B.2(a) of the confirmed plan said – as its three predecessors had also said – that if Kirkwood paid the cure amounts on the mortgages specified in the plan while making all required post-petition payments, "the mortgage[s] will be reinstated according to [their] original terms, extinguishing any right of the mortgagee to recover any amount[s] alleged to have arisen prior to the filing of the petition."

The fourteen-day period for the Bank to appeal the confirmation order came and went. *See* Fed. R. Bankr. P. 8002(a)(1). The Bank did not appeal.

Four years passed. The Bank accepted and cashed every check the chapter 13 trustee sent it in Kirkwood's case. In June 2020, Kirkwood completed his plan payments. That same month, the trustee filed a "notice of final cure payment" under Rule 3002.1(f) for the Bank's first

## STATEMENT

and second mortgages.  Each notice said that "[t]he amount required to cure the default on the claim has been paid in full."

The Bank responded under Rule 3002.1(g) that it disagreed with the trustee's notices.  According to the Bank, Kirkwood still owed arrears of $26,532.22 on the first mortgage and arrears of $9,149.98 on the second mortgage.  Kirkwood then moved under Rule 3002.1(h) for a determination whether he had "cured the default and paid all required postpetition amounts."  Fed. R. Bankr. P. 3002.1(h).[1]

### 2.  Discussion

The answer is yes, he has.  Kirkwood filed claims on the Bank's behalf after the Bank failed to file claims of its own, a procedure the Rules allow.  *See* Fed. R. Bankr. P. 3004.  The claims identified the arrearages on the Bank's first and second mortgages.  Kirkwood proposed multiple plans that would pay those arrearages over the plan term.  His final modified plan was confirmed.  He then made all the payments due under the confirmed plan, curing the arrearages.  Under section B.2(a) of the confirmed plan, Kirkwood's curing of the arrearages reinstated the mortgages according to their terms and barred the Bank from collecting any amounts it alleged were still due.

The Bank disputes none of this.  It complains, though, that the claims Kirkwood filed "significantly underestimated the actual arrearages."  (Resp. at 2).  Perhaps so.  But if the Bank thought the arrearages were too low, it could have filed claims of its own with the correct amounts or taken some action to amend the claims Kirkwood filed on its behalf.  Although it had notice of the claims bar date and the claims Kirkwood filed, it did neither.

Not only did the Bank fail to file claims, it failed to object to confirmation of any of Kirkwood's plans that sought to cure the arrearages shown in the claims.  The Bank failed to object even though it had notice of the original plan and each of the succeeding modified plans.  The Bank had notice of the confirmation order, too – but still it took no action, failing to appeal the order.  The Bank had every chance to protect its rights.  If it believed the arrearages were seriously understated, it could have done something.  It did nothing.

Having failed to object to confirmation in 2016, it cannot object today, after Kirkwood paid what the plan required him to pay.  Under section 1327(a) of the Code, "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is

---

[1]     The motion was set for an evidentiary hearing, but the parties agreed to have a "paper trial" on their joint stipulation of facts.  *See Baxter v. Sun Life Assurance Co. of Can.*, 833 F. Supp. 2d 833, 835 (N.D. Ill. 2011) (stating that the court would conduct "a 'paper' trial in which [it] reviews the record, and, in accordance with Rule 52 of the Federal Rules of Civil Procedure, enters findings of fact and conclusions of law").

-3-

| STATEMENT |
|---|

provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). That means "a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan." *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000); *see also Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000) (stating that "once a bankruptcy plan is confirmed, its terms are not subject to collateral attack"). The Bank's complaints at this point are "water under the bridge." *In re Ranieri*, 598 B.R. 450, 458 (Bankr. N.D. 2019). Rule 3002.1 does not permit "an end run around the finality of confirmation orders." *In re Edwards*, 604 B.R. 417, 426 (Bankr. S.D. Fla. 2019).

Section 1327 also disposes of the Bank's argument that the plan violated the anti-modification provision in section 1322(b)(2). If the Bank believed Kirkwood's plan violated section 1322(b)(2), it should have objected to confirmation. It makes no difference now that the plan might have modified the Bank's rights in violation of the Code. Even a confirmed plan that violates the Code binds a creditor with notice who does not object. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) (holding that confirmation of an impermissible plan was "legal error" but was "enforceable and binding" because the creditor "had notice of the error and failed to object or timely appeal"); *see, e.g., Ranieri*, 598 B.R. at 458 ("Legal error or not, the order confirming Ranieri's plan is binding.").

Next, the Bank argues that nothing prevents it from "enforcing its liens in a post-bankruptcy foreclosure action, as the liens survive." (Resp. at 3). True. Liens survive bankruptcy. *In re Penrod*, 50 F.3d 459 (7th Cir. 1995) ("A secured creditor can bypass his debtor's bankruptcy proceeding and enforce his lien in the usual way, which would normally be by bringing a foreclosure action in a state court."). Because Kirkwood's discharge does not eliminate the Bank's in rem rights under its mortgages, the Bank can foreclose on the Laurel Avenue property – if Kirkwood defaults in the future. But the Bank's right to enforce its liens down the road should Kirkwood default has nothing to do with whether Kirkwood has cured the defaults as of the petition date and has paid all required amounts under his plan. He has.

Finally, the Bank attributes its failure to file claims or object to confirmation to "issues with its prior counsel." (Resp. at 1). Counsel's neglect may explain why the Bank failed to act before, but it gives the Bank no right to undo Kirkwood's successful completion of his case. Clients are "accountable for the acts and omissions of their attorneys." *Pioneer Inves. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993); *see also Choice Hotels, Inc. v. Grover*, 792 F.3d 753, 754 (7th Cir. 2015); *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009). The Bank's remedy, if any, lies against counsel who neglected Kirkwood's case, not against Kirkwood. *Choice Hotels*, 792 F.3d at 754 ("When lawyers fail, the remedy is malpractice litigation against the wrongdoer, not more litigation against an innocent adversary in the original litigation").

Because there is no question that Kirkwood cured the arrearages listed in the Bank's claims and shown in the confirmed plan, his motion for determination of final cure and payment will be granted.

| STATEMENT |
|---|

### 3. Conclusion

The motion of Roudell Kirkwood for determination of final cure and payment is granted. Kirkwood has cured the defaults in the first and second mortgages of State Bank of the Lakes and has paid all required post-petition amounts. The mortgages are reinstated in accordance with their original terms.

Dated:  November 25, 2020

_____
A. Benjamin Goldgar
United States Bankruptcy Judge